**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

UNITED STATES OF AMERICA

v.                                      Criminal No. 3:14CR80

ANTONIO JOHNSON

**MEMORANDUM OPINION**

Antonio Johnson, a federal inmate proceeding <u>pro</u> <u>se</u>, submitted this motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion," ECF No. 69).[1] Johnson claims that counsel rendered ineffective assistance[2] throughout his criminal proceedings. Specifically, Johnson demands relief because:

Claim One:      "Trial counsel was ineffective based on her failure to object to this Court's use of Petitioner's juvenile history." (<u>Id.</u> at 5.)

Claim Two:      "Trial counsel was ineffective for urging Petitioner to reject a more favorable plea bargain." (<u>Id.</u> at 6.)

Claim Three:    "Trial counsel was ineffective for not appealing the denial of Petitioner's motion to suppress." (<u>Id.</u> at 8.)

---

[1] The Court employs the pagination assigned to Johnson's submissions by the CM/ECF docketing system, and corrects the capitalization and punctuation in quotations from Johnson's submissions.

[2] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI.

Claim Four:     "Trial counsel rendered ineffective assistance of counsel when [she] mishandled Petitioner's motion to suppress." (Id. at 9.)

Claim Five:     "Trial counsel was ineffective for failing to file an appeal as instructed by Petitioner." (Id. at 39.)

The Government has responded, asserting that Johnson's claims lack merit. (ECF No. 75.) Johnson has filed a Reply. (ECF No. 78.) For the reasons stated below, the Court will deny Johnson's § 2255 Motion.

## I.  PROCEDURAL HISTORY

On June 17, 2014, a grand jury charged Johnson with possession with intent to distribute a mixture and substance containing a detectable amount of cocaine hydrochloride (Count One), and possession of a firearm and ammunition by a convicted felon (Count Two). (Indictment 1-2, ECF No. 11.) The Indictment was based upon an encounter between Johnson and Richmond City police officers on February 19, 2014 (Statement of Facts ¶¶ 2-3, ECF No. 45), during which officers located a loaded handgun and bags containing heroin in Johnson's vehicle, and a bag containing cocaine on Johnson's person. (Pre-Sentence Investigation Report ("PSR") ¶¶ 7-8, ECF No. 62.)

On July 11, 2014, Johnson, through counsel, Nia Vidal, filed a motion to suppress, arguing that the officers unlawfully

2

stopped and searched Johnson's vehicle and person. (ECF No. 15.) Johnson sought to suppress the items seized during the search,[3] as well as his statements made to the police. (Id. at 1.) The Court held a hearing on that motion on July 30 and 31, 2014. (See ECF Nos. 27, 29.) By Memorandum Opinion and Order entered on October 15, 2014, the Court denied Johnson's motion to suppress. United States v. Johnson, No. 3:14CV80, 2014 WL 5305731, at *12 (E.D. Va. Oct. 15, 2014).

On November 21, 2014, Johnson entered into a Plea Agreement and pled guilty to Count Two of the Indictment. (Plea Agreement ¶ 1, ECF No. 44.) The Plea Agreement indicated that Johnson faced a maximum penalty of ten years of imprisonment for Count Two. (Id.) In his Plea Agreement, Johnson agreed that he was "satisfied that [his] attorney has rendered effective assistance." (Id. ¶ 3.) Johnson also agreed that he understood that he was waiving his right to appeal "the conviction and any sentence within the statutory maximum . . . (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever . . . ." (Id. ¶ 5.) The standard plea colloquy used

---

[3] The items seized included a loaded magazine, a sandwich bag containing cocaine, two baggies containing heroin, and a .45 caliber handgun. (ECF No. 15, at 3.)

in this Court confirms that a defendant is satisfied with counsel's services.

Before sentencing, the Probation Officer concluded that Johnson's total offense level was 25. (Jan. 29, 2015 Pre-Sentence Investigation Report ("PSR") ¶ 24, ECF No. 53.) The total offense level included a base offense level of 24 because Johnson "ha[d] at least two felony convictions of either a crime of violence or a controlled substance offense." (Id. ¶ 15 (citing U.S. Sentencing Guidelines Manual § 2K2.1 (U.S. Sentencing Comm'n 2014)).) With a total offense level of 25 and a Criminal History Category of V, Johnson's Sentencing Guidelines called for 100-120 months of incarceration. (Id. ¶ 85.)

Subsequently, the Probation Officer concluded that Johnson's correct total offense level was 15, which included a base offense level of 14. (Apr. 24, 2015 PSR ¶¶ 15, 24, ECF No. 62.) In making this determination, the Probation Officer noted that Johnson's prior conviction for Possession of Cocaine with Intent to Distribute was not counted as a predicate offense under § 2K2.1 because it "would not have received points because it was not within the applicable time period pursuant to USSG §§ 4A1.1(c) and 4A1.2(e)." (Id. ¶ 89.) With a total offense level of 15 and a Criminal History Category of V, Johnson's

Sentencing Guidelines called for 37-46 months of incarceration. (Id. ¶¶ 84-85.)

On April 23, 2015, the Government filed a motion for an upward variance "on the ground that the defendant is a recidivist . . . from whose future crimes the public needs protection." (ECF No. 60, at 1.) The Government argued that Johnson's "current offense of armed drug trafficking, on top of his long history for similarly dangerous conduct, including his 2006 commission of a homicide, shows that he presents an unacceptably high risk of recidivism for armed drug trafficking and violence." (Id. (internal citation omitted).) The Government requested "a variance to an Offense Level of 21 and a range of 70 to 87 months." (Id.) Johnson, through counsel, opposed the Government's motion. (ECF No. 63.)

At the sentencing hearing, the Court granted the Government's motion for an upward variance. (May 7, 2015 Tr. 27, ECF No. 68.) The Court concluded that an upward variance was necessary in order

> for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide punishment that is just to the defendant, to deter him generally and others who are similarly situated, and to protect the public from further crimes of the defendant who has shown an inclination to commit crimes and to commit crimes involving violence and to commit crimes that involve the risk of violence, carrying firearms while involved in the drug trade . . . .

5

(May 7, 2015 Tr. 27.)

The Court sentenced Johnson to 84 months of imprisonment. (J. 2, ECF No. 66.) Johnson did not appeal.

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.   In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if

6

the claim is readily dismissed for lack of prejudice. Id. at 697.

In the context of a guilty plea, the Supreme Court has modified this second prong of Strickland to require the convicted defendant to "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Of course, in conducting the foregoing inquiry, the representations of the convicted defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). In light of the strong presumption of verity that attaches to a petitioner's declarations during his plea proceedings, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) (citations omitted). Thus, the Fourth Circuit has admonished that, "in the absence of extraordinary circumstances, the truth of sworn

7

statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22. Nothing in the record permits the Court to consider Johnson's sworn statements at the plea colloquy as other than truthful.

## A. Ineffective Assistance During Sentencing

In Claim One, Johnson contends that counsel "was ineffective based on her failure to object to this Court's use of Petitioner's juvenile history" at sentencing. (§ 2255 Mot. 5.) Johnson argues that "had counsel brought the controlling precedent of [United States v.] Howard[, 773 F.3d 579 (4th Cir. 2014)] to this Court's attention precluding the Court's consideration of juvenile crimes, Petitioner would not have been subject to the upward variance based to such a large degree on juvenile conduct." (§ 2255 Mot. 20.) Specifically, Johnson argues that counsel should have objected to the Court's consideration of crimes Johnson committed at age eighteen "as adult crimes." (Id. at 18.) As discussed below, Johnson's claim lacks merit.

In response, trial counsel Nia Vidal states:

Mr. Johnson is correct that counsel did not object to the court's consideration of his juvenile history

based on the Howard decision. In Howard, the district
court considered the defendant as a de facto career
offender, reaching this conclusion based in large part
on the defendant's juvenile adjudications, and imposed
a life sentence when the original guideline range was
120-121 months' imprisonment with a consecutive
sentence of 60 months' imprisonment. Id. at 528, 529.
The Court noted that most of the defendant's serious
convictions occurred when he was a juvenile, while
most of his adult criminal history consisted of
charges of driving on a suspended license. Id. at
529. The Court also compared the defendant's record
to the records of other defendants in previous cases
who were appropriately found to be de facto career
offenders, who had significant adult criminal records.
Id.
          Therefore, it appears that Howard is
distinguishable from the facts in Mr. Johnson's case.
To the extent that it is not distinguishable, a review
of both the entire sentencing transcript as well as
the portion of the transcript cited by Mr. Johnson,
. . . it is apparent that the district court did not
heavily rely on Mr. Johnson's juvenile record in
reaching its sentencing determination. As a result,
counsel did not object to the court's consideration of
this aspect of his history and characteristics.

(Gov't's Resp. Ex. 1 ("Vidal Decl.") ¶ 1, ECF No. 75-1.)

Counsel did not act deficiently by failing to raise a
challenge pursuant to Howard during sentencing. A review of the
record shows that this Court did not rely heavily on Johnson's
juvenile history when determining his sentence. Instead, the
Court stated:

          The fact of the matter is, here, the nature and
circumstances of the offense and the history and
characteristics of the defendant is set out fully in
the presentence report to which both sides agree, and
it reflects a person with - - who is 33 years old, who
has 23 years' worth of criminal history that is
atrocious, that has, among other things, resulted in

9

the death of another human being by virtue of using a firearm at a time when he wasn't supposed to have a firearm in his possession.

Some of those adjudications are juvenile adjudications, and they are not to be considered in assessing points. The extent to which they have been considered in assessing points here, I think, reflects that none of those convictions have been given points, yet they do teach something.

They teach that there has been an increasing pattern in the defendant's conduct of violence, of theft, to violence, to assault, malicious wounding, more theft, throwing missiles into - - excuse me, trespass, possession of marijuana, curse and abuse, drunk in public, curfew violations. What do those show? They show disrespect for the law.

That conduct continues into the adult years, and it continues to escalate. It escalates to possession of cocaine which he's given five years imprisonment with four years and ten months suspended; in other words, leniency. Did the defendant benefit from leniency we look at in the report? No. Then shortly thereafter we have convictions for possession of cocaine while in possession of a firearm, possession of cocaine with intent to distribute, carrying a concealed weapon.

Again, he receives a very lenient sentence, five years' imprisonment for that. He was sentenced to ten years' imprisonment for part of that, but it was suspended - - for part of those charges, but that ten-year component was suspended. As a result, he got five years of imprisonment, and what happens then, he's on supervised release. He absconds from supervision, he commits the offense of involuntary manslaughter, using and displaying a firearm in commission of a felony, and his progress toward violence and disobedience of the law continues.

Then he has a number of other charges that continue in 2014, assault and battery, maliciously shooting, a number of other charges, and then there's the instant offense which he's laden with drugs and a significant loaded firearm with another clip available.

What does that show? It shows someone who doesn't have respect for the law, who hasn't benefited from leniency, and who presents a threat to the

public, and who needs to be deterred by something other than a guideline sentence, by something other than a sentence of leniency, a sentence in the four- to five-year range of imprisonment. That hasn't worked, and we can't rely upon supervision to provide the added component that is argued for by the defense.

(May 7, 2015 Tr. 25-27, ECF No. 68.) While the Court briefly mentioned Plaintiff's juvenile history, it is clear that the Court primarily relied upon Johnson's adult criminal history in determining his sentence. Moreover, the Court properly classified as adult convictions those convictions that Johnson received when he was eighteen. Cf. United States Sentencing Guidelines Manual § 4A1.2 cmt. n.7 (U.S. Sentencing Comm'n 2014) (noting that juvenile offenses are those "committed prior to age eighteen").

Any argument pursuant to Howard or objecting to the Court's reference to Johnson's convictions that occurred when he was eighteen would have been meritless, and counsel cannot be ineffective for failing to raise a meritless claim. See United States v. Moore, 934 F. Supp. 724, 731 (E.D. Va. 1996). Because Johnson has failed to demonstrate any deficiency of counsel or resulting prejudice, Claim One will be dismissed.

**B. Ineffective Assistance During Plea Negotiations**

In Claim Two, Johnson contends that counsel was ineffective "for urging Petitioner to reject a more favorable plea bargain."

(§ 2255 Mot. 6.) Johnson claims that, because of counsel's incorrect advice, he rejected a more favorable plea offer to Count One of the Indictment. (Id. at 22.) As discussed below, Johnson's claim lacks merit.

"During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 556 U.S. 156, 162 (2012) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Generally, claims of ineffective assistance of counsel during the plea process fall into three categories. First, "the [complete] failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance." United States v. Brannon, 48 F. App'x 51, 53 (4th Cir. 2002) (citing United States v. Blaylock, 20 F.3d 1458, 1465-66 (9th Cir. 1994)); see Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003). Second, a defense attorney's inaccurate advice or misinformation in conveying a plea offer may constitute deficient assistance. Brannon, 48 F. App'x at 53 (citing Paters v. United States, 159 F.3d 1043, 1047-48 (7th Cir. 1998); see United States v. Merritt, 102 F. App'x 303, 307-08 (4th Cir. 2004); Wolford v. United States, 722 F. Supp. 2d 664, 688 (E.D. Va. 2010) (concluding that counsel was deficient where he "misled [the petitioner] into believing that she had some possibility of prevailing at trial on the

12

basis of several non-viable defenses"). Third, incomplete advice in conveying a plea also may provide a basis for a claim of ineffective assistance of counsel. See Wolford, 722 F. Supp. 2d at 689 (concluding that "counsel's incorrect and incomplete legal advice to [the petitioner] during the plea negotiation process was objectively unreasonable" (citing Strickland, 466 U.S. at 688)); see also United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer." (citing Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Von Moltke v. Gillies, 332 U.S. 708, 721 (1948))). Here, Johnson contends that he is entitled to relief because counsel provided incorrect advice when conveying the Government's initial plea offer, which called for Johnson to plead guilty to Count One.

Johnson contends that counsel mistakenly told Johnson that he "would qualify as a career offender under [United States Sentencing Guidelines ("USSG") section] 4B1.1 due to his prior state conviction for involuntary manslaughter and a 2001 conviction for possession with intent to distribute." (§ 2255 Mot. 22.) Johnson claims that counsel was mistaken because, "under the Fourth Circuit decision of United States v. Petersen, 629 F.3d 432 (4th Cir. 2010)[,] involuntary manslaughter does not count as an eligible predicate crime for the career offender

provision of 4B1.1." (Id. at 23.) He alleges that, nevertheless, counsel told him that this Court "was conservative and due to [its] judicial philosophy was more inclined than not to find involuntary manslaughter a crime of violence." (Reply Ex. A, ECF No. 78-1.) Johnson argues that, because of counsel's mistaken advice, he rejected an offer for him to plead to Count One, which would have exposed him to a sentencing range of 18 to 24 months. (§ 2255 Mot. 24.)

Vidal's account is as follows:

> Mr. Johnson was initially charged in a criminal complaint with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). At the time of his detention hearing, counsel received a summary of his criminal history completed by the Pretrial Services Division of the U.S. Probation Office. That summary included three prior convictions that could have possibly qualified as serious drug offenses or violent felonies, as those terms are defined under 18 U.S.C. § 924(e)(2). Those convictions, as listed in the pretrial services summary, were manufacture, sale, possession of controlled substance felony (2000); manufacture, sale, possession of controlled substance felony and possession of a firearm while in possession of drugs felony (2001); and involuntary manslaughter (2007). After reviewing the report on June 11, 2014, counsel advised Mr. Johnson of her concern that he may possibly qualify for a sentencing enhancement under the Armed Career Criminal Act ("ACCA") if he was convicted of the charge of possession of a firearm by a convicted felon.
> Based on the information contained in the affidavit attached to the criminal complaint, counsel anticipated that Mr. Johnson would also face a drug charge as a result of cocaine recovered during his arrest. In fact, a federal grand jury returned a two-count indictment with possession of cocaine with

14

intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 1) and possession of a firearm by a convicted felon (Count 2). As a result, counsel also advised Mr. Johnson that he may qualify as a career offender based on the convictions noted above.

After Mr. Johnson's indictment, counsel sought and obtained records from the Circuit Court of Richmond concerning his prior convictions. At that time, counsel discovered that the 2000 drug conviction listed above was a felony simple possession of cocaine, and not a serious drug offense. As a result, counsel was no longer concerned that Mr. Johnson would be subject to the sentencing enhancement under ACCA, and advised Mr. Johnson as such. Nonetheless, counsel advised that Mr. Johnson may still qualify as a career offender based on the remaining two cases noted above if convicted of Count 1 of the indictment.

Over the next several months, in addition to preparing for and litigating the motion to suppress, Mr. Johnson discussed with counsel his concern that involuntary manslaughter would not be considered a crime of violence under the Guidelines definition of that term in U.S.S.G. § 4B1.2(a). Contrary to Mr. Johnson's assertion that counsel "overlooked one salient point," Mot. at 11, counsel discussed the case of United States v. Peterson, 629 F.3d 432 (4th Cir. 2011) at length with him and even provided a copy of that opinion to him, as well as a copy of United States v. Woods, 576 F.3d 400 (7th Cir. 2009). Both of these cases held that involuntary manslaughter is not a crime of violence under the career offender guideline. Counsel explained that, while a good argument could and would be made that involuntary manslaughter, as charged in Virginia, is not a crime of violence using Peterson and Woods, it was not a forgone conclusion that counsel would be successful in that argument because Peterson involved involuntary manslaughter as charged in North Carolina, 629 F.3d at 434, and Woods involved involuntary manslaughter as charged in Illinois, 576 F.3d at 401.

Counsel also advised Mr. Johnson that either one of the charges from 2001 could also qualify as a controlled substance offense under U.S.S.G. § 4B1.2(b). With respect to the charge of manufacture, sale, possession of controlled substance

15

felony, counsel advised that, despite the fact that this prior conviction would not count as any criminal history points by itself, it could nevertheless qualify as a predicate under the career offender guideline depending on how the court interpreted the single sentence rule under U.S.S.G. § 4A1.2(a)(2). Counsel was aware that, at that time, the Sentencing Commission was considering an amendment to the single sentence rule, and counsel believed that the amendment would benefit Mr. Johnson. Ultimately, the particular amendment did benefit Mr. Johnson, and this conviction could not have been used as a predicate offense as a result. See U.S.S.G. App. C, amend. 795.

With respect to the charge of possession of a firearm while in possession of drugs, counsel advised Mr. Johnson that this offense could also possibly qualify as a controlled substance offense and be used as a predicate offense under U.S.S.G. § 4B1.2. Counsel noted that there was a strong argument against using this offense as a predicate because the offense is described in the sentencing order as "possession of cocaine while in possession of a firearm," which does not appear to involve the manufacture, import, export, distribution or possession with intent to manufacture, import, export, or distribute. However, a closer inspection of the sentencing order, including the charging statute and the sentence imposed for that offense, would likely establish that Mr. Johnson was actually sentenced for possession of cocaine with intent to distribute while in possession of a firearm. See Va. Code Ann. § 18.2-308.4(C) (requiring a mandatory minimum sentence of five years' imprisonment for this offense). In addition, this offense is closely analogous to possession of a firearm in furtherance of drug trafficking under 18 U.S.C. § 924(c), which is considered a controlled substance offense under U.S.S.G. § 4B1.2(b). See Application Note 1.

On October 16, 2014, counsel visited Mr. Johnson to discuss the denial of the motion to suppress and to discuss his options with respect to pleading guilty or going to trial. Specifically, counsel discussed the options of having a contested trial, pleading guilty to both counts without a plea agreement to preserve his right to appeal the sentence, seeking a conditional plea to preserve his right to appeal the

motion to suppress, and having a stipulated trial, which would preserve his right to appeal both the motion to suppress and the sentence.

On October 20, 2014, counsel visited Mr. Johnson and discussed the government's initial plea offer to Count 1. Counsel again advised him that, if convicted of Count 1, he could be considered a career offender. Counsel discussed proposing an alternate plea to Count 2 to the government. Counsel advised Mr. Johnson as to all of the possible outcomes if he were convicted of Count 1 or Count 2, as well as all of the potential arguments against using any of his prior offenses as predicate offenses under the career offender guideline or to enhance his base offense level under the firearm guideline. Counsel again explained the options of having a contested trial, pleading guilty to both counts without a plea agreement to preserve his right to appeal the sentence, seeking a conditional plea to preserve his right to appeal the motion to suppress, and having a stipulated trial, which would preserve his right to appeal both the motion to suppress and the sentence.

If Mr. Johnson were found to be a career offender, his guideline range as to Count 1, which has a 20-year maximum sentence, with a plea would be 151 to 188 months' imprisonment.[4] If he pleaded guilty to Count 1 and he was not a career offender, his advisory guideline range would be 27-33 months' imprisonment.[5] If Mr. Johnson pleaded guilty to Count 2, which has a 10-year maximum penalty, and he

---

[4] This calculation is based on a Criminal History Category of VI and a Total Offense Level of 29. See U.S.S.G. § 4B1.1.

[5] This calculation is based on a Criminal History Category of V, see PSR ¶ 54, and a Total Offense Level of 14, which is based on a base offense of 12 (for less than 50 grams of cocaine), see U.S.S.G. § 2D1.1(c)(14); a two-level enhancement for possession of a firearm, see U.S.S.G. § 2D1.1(b)(1); and a two-level reduction of acceptance of responsibility, see U.S.S.G. § 3E1.1(a). Therefore, Mr. Johnson's calculation of this alternative range, see Mot. at 12, is incorrect.

received enhancements to his base offense level, his guideline range would either be 100-120 months' imprisonment if he had two prior convictions for a crime of violence or controlled substance offense;[6] 70-87 months' imprisonment if he had one prior conviction for a crime of violence or controlled substance offense;[7] or 37-46 months' imprisonment if there were no enhancements to his base offense level.[8] Thus, should counsel's arguments that none of his prior convictions should qualify as predicate offenses or enhancements to his base offense level, Mr. Johnson risked receiving an additional 10-13 months of imprisonment if he pleaded guilty to Count 2 versus Count 1. In addition, counsel advised Mr. Johnson, that if she was successful in arguing that none of his prior convictions should enhance his sentence, that he would likely deal with an upward departure or variance by the government or the court.

Counsel advised that Mr. Johnson needed to decide which risk he wanted to take. While it was possible that Mr. Johnson could be found not to be a career offender, this result was not a guarantee given that no court had held that involuntary manslaughter, as charged in Virginia was not a crime of violence, and that either of his drug convictions from 2001 could

---

[6] This calculation is based on a Criminal History Category of V, see PSR ¶ 54; a Base Offense Level of 24, see U.S.S.G. § 2K2.1(a)(2); a four-level enhancement for possessing the firearm in connection with another felony offense, see U.S.S.G. § 2K2.1(b)[(6)](B); and a three-level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1(b).

[7] This calculation is reached using the same calculations in Note [5] above, with the exception of a reduced Base Offense Level of 20. See U.S.S.G. § 2K2.1(a)(4)(A).

[8] This calculation is reached using the same calculations in Notes [5 and 6] above, with the exception of a reduced Base Offense Level of 14. See U.S.S.G. § 2K2.1(a)(6)(A).

have been considered controlled substance offenses.[9] Counsel never told Mr. Johnson that the court would certainly find that he was a career offender.

Counsel then spoke to the government about the alternative plea offer, and the government agreed to the offer with the stipulation that Mr. Johnson must sign a written plea agreement, which would give up his right to appeal the denial of the motion to suppress and the sentence. Counsel visited Mr. Johnson on November 12, 2014, and informed him about the government's position with respect to the alternate plea offer. Counsel again advised Mr. Johnson about the possible outcomes with respect to Counts 1 and 2. Mr. Johnson requested time to consider his decision. Counsel visited Mr. Johnson again on November 17, 2014, and Mr. Johnson agreed to plead guilty to Count 2 pursuant to a written plea agreement, thus waiving his right to appeal the motion to suppress and the sentence.

(Vidal Decl. ¶ 2.)

The United States Court of Appeals for the Sixth Circuit has observed that, in general, "[a] criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising" the option to plead guilty or proceed to trial. Smith v. United States,

---

[9] This risk is most readily apparent in the initial presentence report disclosure on January 29, 2015 (Dock. No. 53), where the probation officer initially determined that Mr. Johnson had a base[] offense level of 24 based on two prior convictions for either a crime of violence or a controlled substance offense. See PSR ¶ 15 (Jan. 29, 2015).

348 F.3d 545, 553 (6th Cir. 2003). Thus, when communicating a plea offer, counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) (citing United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998); Jones v. Murray, 947 F.2d 1106, 1110-11 (4th Cir. 1991)). Although "reasonable professional conduct does not under all circumstances require a lawyer to give an explicit opinion as to whether a client should take a plea offer," Purdy, 208 F.3d at 48 (citing Jones, 947 F.2d at 1110-11), it does require counsel to provide his client with a candid evaluation of the Government's case. See Jones, 947 F.2d at 1111 ("[T]he lawyer should advise the accused with complete candor concerning all aspects of the case, including a candid estimate of the probable outcome." (quoting II American Bar Association Standards for Criminal Justice, Standard 4-5.1 (2d ed. 1986 Supp.)) (alteration in original).

Moreover, the law rather strongly teaches that it is the client who "ultimately must decide whether to accept or reject a plea offer." Mann v. United States, 66 F. Supp. 3d 728, 739 (E.D. Va. 2014); see Purdy, 208 F.3d at 45 (citation omitted) (noting that "the ultimate decision whether to plead guilty must

be made by the defendant"); United States v. Dailey, Nos. 3:09-CR-233-3, 3:12-cv-362, 2013 WL 1768053, at *4 (E.D. Va. Apr. 24, 2013) (noting that "the professional norms surrounding plea negotiations require defense counsel to[, inter alia,] permit the client to make the ultimate decision" (quoting Clark v. United States, No. 07cr281, 2012 WL 253436, at *2 (D. Md. Jan. 26, 2012))). The lawyer is to advise about options. See Jones, 947 F.2d at 1111. And, in so doing, defense counsel is not obligated to recommend a particular choice, or to press the client to change his mind or pressure the client into one choice or the other. Id.; see also Purdy, 208 F.3d at 45 (internal citations omitted) (noting that "a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer"); Carillo-Morales v. United States, 952 F. Supp. 2d 797, 804 (E.D. Va. 2013) (concluding that "an attorney is under no obligation to recommend a particular course of action to a client" (citing Jones, 947 F.2d at 1110)); Jackson v. United States, 638 F. Supp. 2d 514, 580 (W.D.N.C. 2009) (concluding that ineffective assistance does not occur when "counsel deci[des] 'to refrain from a vigorous attempt to change his client's mind'" (quoting Jones, 947 F.2d at 1111)).

Here, Vidal, in exemplary fashion, lived up to all of the obligations required by the law and then some. Contrary to

Johnson's assertion, Vidal never conclusively advised him that the Court would find him to be a career offender. Instead, Vidal advised Johnson that an argument could be made that, under Virginia law, involuntary manslaughter did not qualify as a predicate crime of violence; however, Vidal could not guarantee success on this argument because no court had definitively made that determination. Vidal also investigated Johnson's prior criminal history and, on multiple occasions, advised him of all the possible outcomes if Johnson were convicted of Count One or Count Two, and the sentencing consequences if Johnson were determined to be a career offender. By counseling him as to all of the possible outcomes, Vidal ensured that Johnson was able to make an informed decision about whether to plead guilty. After taking time to consider Vidal's advice, Johnson chose to plead guilty to Count Two pursuant to a written plea agreement.

To the extent that Johnson contends that Vidal should have done more to pressure Johnson to accept a plea offer to Count One, it is clear that Vidal was under no obligation to pressure Johnson to accept or reject a plea offer. Rather, Vidal acted competently and reasonably with respect to the advice that she provided Johnson regarding all of the potential outcomes should Johnson be convicted of Count One or Count Two, and should it be

22

determined that Johnson qualified as a career offender. Thus, Johnson fails to demonstrate any deficiency of counsel.

Johnson also fails to demonstrate resulting prejudice. The prejudice inquiry focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Merritt, 102 F. App'x at 307 (quoting Hill, 474 U.S. at 59). Johnson must demonstrate "a reasonable probability" that he would have accepted the [other] plea offer if he "had . . . been afforded effective assistance of counsel. Missouri v. Frye, 132 S. Ct. 1399, 1409 (2012); see Merritt, 102 F. App'x at 307. Johnson must also show that "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentenced that in fact were imposed." Lafler, 132 S. Ct. at 1385.

Johnson simply has not demonstrated that the prejudice that he asserts actually derives from any source other than his own actions. After being fully advised by Vidal, Johnson himself made the decision to plead guilty to Count Two rather than Count One. Moreover, Johnson simply has not demonstrated that he would have received a less severe sentence than he actually received had he pled guilty to Count One. Although a plea to Count One may have resulted in a lower potential sentencing range under the Sentencing Guidelines, see supra at 14-19,

23

Johnson has not shown that he would have been sentenced within that range, or that the Government would not still have moved for an upward variance. To the contrary, Johnson could have received a much greater sentence (151 to 188 months) if he had pled to Count One and was found to have been a career offender (Vidal Decl. ¶ 2.) Moreover, considering the factors that resulted in the sentence imposed, it is virtually inconceivable that he would have received a lesser sentence had he pled to Count One.

Because Johnson fails to demonstrate deficiency of counsel or resulting prejudice, Claim Two will be dismissed.

### C. Ineffective Assistance Regarding Motion To Suppress

#### 1. Claim Four

In Claim Four, Johnson alleges that "trial counsel rendered ineffective assistance . . . when [she] mishandled Petitioner's motion to suppress." (§ 2255 Mot. 9.) Johnson contends that "counsel botched his motion to suppress by [failing] to call him as a witness in order to supply critical testimony necessary to the success of his claim that police officers violated the Fourth Amendment, particularly procuring testimony from Petitioner that he was indeed aware that the police [were] following him . . . ." (§ 2255 Mot. 36.) Johnson avers that

during the preparation of my pleading for motion to suppress evidence, I advised my attorney Mrs. Nia Vidal, that when I made eye contact with Officer Gilbert at the intersection of Venable Street and Jessamine Street, I was aware at that point until I was approached by police officers in the rear parking lot of 500 North Block of North 23rd, that I was being pursued by these officers. Despite counsel knowing this, she refused my request that I take the stand to provide this critical testimony, that I was aware of the police following me.

(Id. Ex. B, ECF No. 69-2.)

In response, Vidal avers as follows:

Counsel was acutely aware of the importance of Mr. Johnson's testimony that he was being followed, as this information was important to the Fourth Circuit in the analogous case of United States v Jones, 678 F.3d 293 (4th Cir. 2012), which is a case that counsel herself successfully litigated before that Court. It is important to note, however, that the Court's finding that Mr. Jones was detained without reasonable suspicion did not depend solely on the fact that Mr. Jones was aware that he was being followed, but based on a totality of other factors. See 678 F.3d at 301-303.

Counsel had every intention of calling Mr. Johnson [] as a witness, and visited him on multiple occasions leading up to the hearing to question him about the path he took from his point of departure in the Church Hill neighborhood in Richmond to the location of his arrest. Counsel and her defense investigator drove the route that Mr. Johnson took in an effort to become familiar with the various streets, including the width of the streets, the length of his route, and when he became aware that the officers were following him. Both counsel and the defense investigator visited the location of his arrest multiple times both day and night to understand the lighting and dimensions of the parking lot in which he was approached by police officers.

The purpose of this investigation was to support the theory that either immediately upon approaching Mr. Johnson in the parking lot, or very shortly

25

thereafter, that Mr. Johnson was seized without reasonable suspicion or probable cause. Counsel visited Mr. Johnson on July 29, 2014, the day before the first day of the suppression hearing to review his testimony. For the first time during that meeting, Mr. Johnson revealed that, when the officers asked him if he had his driver's license, he said he did not and that it was in the house. Not only was this consistent with the information in the police report, but it would have immediately provided the officers with reasonable suspicion to conduct an investigatory detention of Mr. Johnson, effectively killing any chance of prevailing on the motion to suppress. Counsel advised Mr. Johnson of this problem immediately during that meeting, and further told him that, as a result, counsel could not call him as a witness. Mr. Johnson did not protest counsel's decision or offer any reasons as to why counsel's strategic assessment was incorrect.

(Vidal Decl. ¶ 4.) As discussed below, Vidal did not act deficiently by choosing not to offer Johnson's testimony to support the Motion to Suppress.

Johnson believes that he would have prevailed on his Motion to Suppress if counsel had presented Johnson's testimony that he was aware that the police had been following him. In preparing the Motion to Suppress, Vidal recognized that Johnson's case was analogous to Jones, in which the Fourth Circuit concluded that "the totality of the facts . . . requires us to conclude that the officers detained Jones before they had any justification for doing so." 678 F.3d at 305. In so holding, the Fourth Circuit noted that "the encounter here began with a citizen knowing that the police officers were conspicuously following

him, rather than a citizen, previously unaware of the police, being approached by officers seemingly at random." Id. at 300 (citations omitted). However, after Johnson's admission that, before the stop, he had been driving without a license, Vidal made a strategic decision not to present Johnson's testimony, because Johnson's admission that he was driving without a license would have immediately provided justification for officers to detain Johnson for an investigation. See id. at 298; see also United States v. Hughart, 645 F. App'x 678, 683 (10th Cir. 2016) (noting that defendant's action of driving a vehicle without a license provided enough reasonable suspicion to justify detention). Thus, Vidal acted reasonably in deciding not to offer Johnson's testimony to support the Motion to Suppress.

Moreover, Johnson fails to demonstrate any resulting prejudice from Vidal's decision to not call Johnson to the stand during the suppression hearing. To demonstrate prejudice, Johnson must demonstrate that his "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). In the Motion to Suppress, Vidal argued that Johnson's encounter with the police was not consensual and that, "because the

27

officers had no reasonable, articulable suspicion that Johnson was involved in any criminal activity, their seizure of him was unlawful." United States v. Johnson, No. 3:14CR80, 2014 WL 5305731, at *8 (E.D. Va. Oct. 15, 2015). As Vidal recognized, Johnson's admission that he was driving without a license before his detention by police was detrimental to her argument that the officers had no suspicion that Johnson was involved in any criminal activity. Thus, Johnson fails to demonstrate that the outcome of the Motion to Suppress would have been different had Vidal offered Johnson's testimony. Because Johnson has failed to demonstrate any deficiency of counsel or resulting prejudice, Claim Four will be dismissed.

### 2. Claim Three

In Claim Three, Johnson faults counsel "for not appealing the denial of Petitioner's motion to suppress." (§ 2255 Mot. 8.) According to Johnson,

> [c]ounsel clearly should have appealed this Court's attempt to distinguish Petitioner's case from the controlling precedent on illegal seizures the decision of United States v. Jones, 678 F.3d 293 (4th Cir. 2013) because there was hardly any material distinction between Jones and the instant case, and in any event the reasons largely relied on by this Court in denying the motion to suppress w[ere] unsupported by the record or at the least debatable for appellate purposes.

(Id. at 26-27.)

28

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones v. Barnes, 463 U.S. 745, 751-52 (1983)). A presumption exists that appellate counsel "decided which issues were most likely to afford relief on appeal." Bell, 236 F.3d at 164 (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993)). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)).

Johnson cannot demonstrate that he would have prevailed on an appeal had counsel challenged the denial of the Motion to Suppress on appeal. By entering into the Plea Agreement with the Government, Johnson waived his right to appeal "the

conviction and any sentence within the statutory maximum . . .
on the grounds set forth in Title 18, United States Code,
Section 3742 or on any ground whatsoever . . . ." (Plea
Agreement ¶ 5.) "The right to challenge on appeal a Fourth
Amendment issue raised in a motion to suppress is a
nonjurisdictional defense and thus is forfeited by an
unconditional guilty plea." United States v. Locklear, 514 F.
App'x 315, 317 (4th Cir. 2013) (citing Haring v. Prosise, 462
U.S. 306, 320 (1983)). Any appeal challenging the denial of the
Motion to Suppress would have been foreclosed by the waiver
contained in Johnson's Plea Agreement. See id. Accordingly,
because Johnson cannot demonstrate any deficiency of counsel or
resulting prejudice, Claim Three will be dismissed.

D.    **Ineffective Assistance Regarding Failure To Appeal**

In Claim Five, Johnson asserts that Vidal was ineffective
because she failed to file an appeal as directed. (§ 2255
Mot. 39.) In support of his claim, Johnson states:

> I, Antonio Johnson swear under the penalty of
> perjury pursuant to 28 U.S.C. [§] 1746, that at my
> sentencing, I notified my attorney Mrs. Nia Vidal, to
> file an appeal of my motion to suppress and my
> sentence, which she ignored.

(Id. Ex. C, ECF No. 69-3.) In his § 2255 Motion, he states, in
sum, "[b]ecause this fact is clearly established through the
sworn affidavit of Petitioner, ineffective assistance of counsel

has clearly been established." (§ 2255 Mot. 39.) Johnson's vague, conclusory claim, however, lacks merit.

In Roe v. Flores-Ortega, the Supreme Court noted that it "ha[d] long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." 528 U.S. 470, 477 (2000). The Court went on to state:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent question: whether counsel is fact consulted with the defendant about an appeal.

Id. at 478. "The duty to consult includes two obligations: to advise the client 'about the advantages and disadvantages of taking an appeal,' and to make a 'reasonable effort to discover' whether the client wants to appeal." Baughman v. United States, 319 F. App'x 866, 870 (11th Cir. 2009) (quoting Flores-Ortega, 528 U.S. at 478). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, 528 U.S. at 478 (emphasis added).

An evidentiary hearing is generally required where a court must resolve credibility issues arising from conflicting affidavits. See Blackledge v. Allison, 431 U.S. 63, 82 n.25 (1977). An evidentiary hearing is not always necessary, however, as "[c]hoosing between conflicting affidavits without a hearing may be reasonable when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit sets out a detailed account of events." Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007) (citations omitted). Such is the case here.

Here, Johnson vaguely swears that, at his sentencing hearing, he told Vidal to file an appeal of the motion to suppress and his sentence. (§ 2255 Mot. Ex. C.) In contrast to Johnson's conclusory statement, Vidal avers that:

> As indicated . . . above, Mr. Johnson was well aware that, if he chose to plead guilty to Count 2, he would waive his right to appeal both the denial of the motion to suppress and the sentence. In addition, as discussed . . . above, Mr. Johnson was also aware of his options that could have preserved his right to appeal either the motion to suppress, the sentence, or both.
> After his sentencing hearing on May 7, 2015, counsel met with Mr. Johnson and reminded him that he waived his right to appeal. Counsel advised nonetheless, that should he choose to file an appeal, he should contact counsel within 14 days. Counsel also advised Mr. Johnson that, should he file an appeal, that would be considered a breach of the plea agreement, and that his appeal would likely be dismissed.

On May 18, 2015, Mr. Johnson called counsel and asked that counsel file an appeal on his behalf. Counsel again reminded Mr. Johnson that he had waived his right to appeal in the plea agreement, and filing a notice of appeal would be considered a breach of the plea agreement. Counsel also stated that the appeal would likely be dismissed based on the valid waiver in the plea agreement, but would file the notice of appeal if Mr. Johnson still wanted her to do so. In the same phone call, Mr. Johnson ultimately decided not to file an appeal. The next morning, counsel received a phone call from his friend, Lonita Harris, stating that Mr. Johnson had called her and asked that she contact counsel about the filing of an appeal. Counsel advised Ms. Harris that she spoke to Mr. Johnson the day before, and he decided not to appeal. Counsel then advised Ms. Harris that, should he change his mind, there were three more days before the deadline to file the notice of appeal. Counsel did not hear further from Mr. Johnson, Ms. Harris, or anyone else on his behalf concerning the filing of a notice of appeal.

(Vidal Decl. ¶ 3 (footnote omitted).)

Here, Vidal fully satisfied her duty to consult with Johnson with respect to pursuing an appeal. And, after that thorough consultation, Johnson expressly decided not to appeal. See Flores-Ortega, 528 U.S. at 478. The record shows that Johnson deliberately elected not to file an appeal. His sparse conclusory affidavit is dispositively outweighed by Vidal's affidavit. And, Johnson has provided nothing to counter Vidal's clear, detailed and unequivocal affidavit. For the foregoing reasons, Johnson has not established that Vidal's performance was deficient and Claim Five will be dismissed.

## III. CONCLUSION

For the foregoing reasons, Johnson's § 2255 Motion (ECF No. 63) will be denied. The action will be dismissed. A certificate of appealability will be denied.

The Clerk is directed to send a copy of the Memorandum Opinion to Johnson and counsel of record.

It is so ORDERED.

/s/                    REP

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: August ___, 2017